UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| RLI INSURANCE COMPANY,<br>                                      Plaintiff,<br><br>            v.<br><br>STEVEN SLASKI,<br>                                      Defendant. | No. 5:25-cv-02170 |

**O P I N I O N**
**Motion to Dismiss, ECF No. 12 – Granted and Denied in part**

**Joseph F. Leeson, Jr.**                                                           **March 4, 2026**
**United States District Judge**

## I.      INTRODUCTION

Plaintiff RLI Insurance Company ("RLI") initiated this action against Defendant Steven

Slaski, seeking declaratory judgment and reimbursement under an unjust enrichment theory. RLI

asserts that the two insurance policies it held with Slaski should be deemed void *ab initio* due to

material misrepresentations in Slaski's insurance applications, and that RLI should be entitled to

reimbursement of the partial settlement moneys previously paid on Slaski's behalf, because they

constitute unjust enrichment. Defendant Slaski has moved to dismiss under Fed. R. Civ. P.

12(b)(6). For the reasons stated below, the Motion to Dismiss is granted and denied in part.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.      The Policies

On or about October 4, 2022, Defendant Steven Slaski signed and submitted a Personal

Umbrella Liability Insurance Application to RLI (the "2022 Application"). Am. Compl. ¶ 15,

---

[1]      The Court must accept all allegations in the Amended Complaint as true and view them
in the light most favorable to the nonmoving party. *See Phillips v. County of Allegheny*, 515 F.3d
224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.
2002)) The facts in the background section are written accordingly.

ECF No. 10.[2] RLI then issued Personal Umbrella Insurance Policy No. PUP2085695 to Slaski for the period of November 20, 2022 to November 2023 (the "2022 Policy"). *Id.* at ¶ 16. On or about October 17, 2023, Slaski applied for a renewal of his personal umbrella liability insurance with RLI (the "2023 Application"). *Id.* at ¶ 38. RLI then issued Personal Umbrella Insurance Policy No. PUP2085695 to Slaski for the period of November 20, 2023 to November 2024 (the "2023 Policy"). *Id.* at ¶ 39. Both Policies included a "Concealment – Misrepresentation" provision which states that "[a]ll insurance provided by this policy is void if you or any Insured conceal or misrepresent any material fact of circumstance relating to this insurance at any time." *Id.* at ¶ 63.

### 1.    The 2022 Application and Policy

The 2022 Application asked many questions about Slaski's household and assets. Question 1 asked "[h]ow many automobiles are owned (titled or registered to), leased, rented, or regularly operated by you or any member of your household?" *Id.* at ¶ 17. Slaski answered "4." *Id.* at ¶ 18. Question 2 asked "[h]ow many residential properties - regardless of location - are owned by or rented to you or any member of your household?" *Id.* at ¶ 29. Slaski responded "8." *Id.* at ¶ 30. Question 5 asked "[w]hat is the total number of drivers?" and defined "drivers" as including persons "with a learner's permit or valid driver's license." *Id.* at ¶ 19. To this, Slaski answered "1." *Id.* at ¶ 20. Question 6 then asked how many of those drivers were under the age of twenty-two, *id.* at ¶ 23, to which Slaski answered "0," *id.* at ¶ 24. Question 26 later asked Slaski to also "include any other person who operates an automobile owned (titled or registered to), leased, rented or regularly operated by you or a member of your household at least 50% or

---

[2]    Certain paragraphs in the Amended Complaint contain bolding for illustrative purposes. *See* ECF No. 10. For the purposes of this Opinion, quotes from the Amended Complaint omit any bolding.

more of that automobile's use." *Id.* at ¶ 21. In response, Slaski identified only himself. *Id.* at ¶ 22. The 2022 Application also included a "Fraud Warning" cautioning insurance applicants of the legal consequences for providing fraudulent statements, *id.* at ¶ 36, and Slaski signed an Applicant Statement warranting that the information he provided in the 2022 Application was "true and complete." *See id.* at ¶ 35. RLI then formed the 2022 Policy after receiving Slaski's 2022 Application. *See id.* at ¶ 16.

### 2.    The 2023 Application and Policy

The 2023 Application posed similar questions. Question 1 asked "[h]ow many automobiles are owned (titled or registered to), leased, rented, or regularly operated by you or any member of your household?" *id.* at ¶ 40, to which Slaski responded "4," *id.* at ¶ 41. Question 2 asked how many residential properties were owned or rented by Slaski or a member of his household, *id.* at ¶ 52, to which he answered "5," *id.* at ¶ 53. When asked for the total number of drivers in his household, Slaski responded "1." *Id.* at ¶¶ 42-43. When asked how many of those drivers were under the age of twenty-two, Slaski answered "0." *Id.* at ¶¶ 46-47. When tasked with listing "any other person who operates an automobile owned (titled or registered to), leased, rented or regularly operated by you or a member of your household at least 50% or more of that automobile's use," *id.* at ¶ 44, Slaski again identified only himself. *Id.* at ¶ 45. Like the 2022 Application, the 2023 Application also included a Fraud Warning and a signed Applicant Statement. *See id.* at ¶¶ 58-59. RLI then formed the 2023 Policy after receiving Slaski's 2023 Application. *See id.* at ¶ 51.

### B.    The Winger Action

On or about July 5, 2023, a complaint was filed against Slaski and other defendants in the Court of Common Pleas of Philadelphia County by two plaintiffs, Mr. and Mrs. Winger (the

"Winger Action"). *Id.* at ¶ 64. The Wingers, a husband and wife, alleged that Mr. Winger was injured on one of Slaski's residential properties when, while performing roofing construction, Mr. Winger fell off the roof and sustained serious injuries. *Id.* at ¶¶ 65-66. The Wingers claimed that Slaski was "acting as the general contractor and/or construction manager in charge of the project" and that his negligence led to Mr. Winger's injuries. *Id.* at ¶¶ 67-68.

On or around May 6, 2024, Slaski submitted a claim to RLI requesting coverage for the Winger Action under the 2022 Policy. *Id.* at ¶ 69. On July 17, 2024, RLI sent Slaski a "Reservation of Rights" letter which partially disclaimed coverage, reserved all rights under the 2022 Policy to disclaim coverage, and sought additional information concerning the residential properties owned by Slaski at the time he completed the 2022 Application, including the residential property where Mr. Winger was injured. *Id.* at ¶¶ 70-71. On September 25, 2024, Slaski provided a response with attachments. *Id.* at ¶ 72. Slaski supplemented this response six times over the next five months.[3] *See id.* at ¶¶ 73-74.

On February 14, 2025, Slaski's counsel advised RLI that they had received an offer to resolve the Winger Action for policy limits, stating: "RLI needs to come to the table now with full policy limits and participate. Failing to do so may expose its insured, my client, Mr. Slaski, to significant financial loss." *Id.* at ¶¶ 75-76. On February 21, 2025, RLI issued Slaski a Notice of Intent to Rescind the Policies (the "NOI") based on alleged misrepresentations contained in Slaski's 2022 and 2023 Applications. *Id.* at ¶ 77. Slaski responded by indicating his disagreement with the NOI and sent additional documents for RLI to review. *Id.* at ¶ 79. RLI replied that it was "willing to discuss further, without waiving its right to rescind the Policies."

---

[3] Slaski supplemented his response on September 27, 2024, Am. Compl. at ¶ 73, on November 6, 12, 13, and 14, 2024, and on February 12, 2025, *id.* at ¶ 74. It is unclear from the record what each of these supplements contained.

*Id.* at ¶ 80. On April 29, 2025, Slaski sent a letter asking RLI to tender the limits of the 2022 Policy at a mediation with the Wingers, scheduled for May 1, 2025. *Id.* at ¶¶ 81-82. This letter advised RLI that the Wingers' "injuries are significant and have the potential to result in an eight-figure verdict against Slaski," *id.* at ¶ 83, and that RLI's failure to tender the 2022 Policy limit would "prejudice Mr. Slaski" and "expose… Mr. Slaski[] to significant financial loss," *id.* at ¶ 84. The next day, on April 30, 2025, RLI responded to the letter and agreed to participate in the mediation, *id.* at ¶¶ 86-87,[4] advising "that its participation in the mediation was not waiver of its right to seek recission or reimbursement for any contributions made toward settlement," *id.* at ¶ 88 (capitalization omitted). RLI also filed its suit against Slaski for rescission and reimbursement in this Court that same day. *See* Compl., ECF No. 1. A letter from RLI's counsel to Slaski's counsel on May 1, 2025 confirmed the same, stating "the Court has not yet made a determination regarding RLI's right to rescind the personal umbrella policies at issue," and that "RLI's contribution is not a voluntary payment and is being made without waiver of, and subject to, RLI's rights to pursue its rescission action and pursue reimbursement from Mr. Slaski." *See* ECF No. 10-3.

At the mediation, RLI agreed to pay a confidential amount toward the settlement of the Winger Action, Am. Compl. at ¶ 92, while representing that "it was not waiving its rights under the Policies to continue the [Default Judgment] Action to rescind the Policies and . . . to seek reimbursement," *id.* at ¶ 93. During the mediation, RLI gave the following statement to Slaski's counsel:

> As the Court has not yet made a determination regarding RLI's right to rescind the personal umbrella policies at issue, and in light of Mr. Slaski's unwillingness to

---

[4]   RLI's April 30, 2025 response also acknowledged Slaski's continued disagreement with RLI's intent to rescind the Policies and Slaski's concerns about potential exposure to a verdict in excess of the settlement demand. *Id.* at ¶ 86.

mitigate his exposure, RLI is taking the extraordinary measure of offering to protect Mr. Slaski from personal exposure in the Winger action by contributing to the settlement of the Winger action. RLI's contribution is not a voluntary payment and is being made without waiver of, and subject to, RLI's rights to pursue its rescission action and pursue reimbursement from Mr. Slaski for the full amount of RLI's contribution toward the settlement of the Winger action.

*Id.* at ¶ 94.

### C.     Procedural History

On April 30, 2025, RLI initiated the instant action by filing its Complaint in this Court. *See* ECF No. 1. On August 18, 2025, RLI filed an Amended Complaint, in which it brings four claims for declaratory relief: seeking rescission of the 2022 Policy (Count I) and of the 2023 Policy (Count II), seeking a declaration that Slaski is not covered under the 2022 Policy (Count III), and seeking a declaration that RLI is entitled to reimbursement of the partial settlement payments it made for Slaski's benefit (Count IV). *See* Am. Compl., ECF No. 10. The Amended Complaint also brings separate claims for reimbursement (Count V), and for unjust enrichment (Count VI). *See id.* At base, RLI alleges that Slaski's answers in the 2022 and 2023 Applications were incorrect or misleading at the time they were written, and that absent these alleged misrepresentations, the 2022 and 2023 Policies would not have been formed. *See id.* Specifically, RLI alleges that, contrary to Slaski's answers, as of the date of the 2022 and 2023 Applications, Slaski had roughly five adults living in his household, all of whom were drivers and two of whom were under the age of twenty-two, and that Slaski had at least eleven qualifying "residential properties." *See id.* at ¶¶ 27, 32-33, 49, 55.

On September 29, 2025, Slaski moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Motion, ECF No. 12. In the Motion, Slaski argues that several of RLI's claims are duplicative, that the unjust enrichment claim is barred by the parties' written agreements, and that RLI's settlement contribution was voluntary, thereby barring its ability to

seek reimbursement. *See id.*; Brief in Support of Motion to Dismiss ("Brief in Support"), ECF No. 12-1. After an extension of time, RLI responded to the Motion to Dismiss on October 29, 2025. *See* ECF No. 15. Slaski filed his Reply thereto on November 14, 2025. *See* ECF No. 18. The Court is now prepared to render a decision on the Motion.

## III.   LEGAL STANDARDS

### A.     Motion to Dismiss under Rule 12(b)(6) – Review of Applicable Law

When deciding a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678-79 (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief . . . without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain

statement of the claim showing that the pleader is entitled to relief"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, a "document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and italics omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### 1. Declaratory Judgment – Declaring Policies Void *ab initio*

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). Under Pennsylvania law, to declare an insurance policy void *ab initio* "is the same as a rescission of the [p]olicy." *Berkley Assurance Co. v. Colony Ins. Co.*, 858 F. App'x 561, 567 (3d Cir. 2021) (citing *Klopp v. Keystone Ins. Companies*, 528 Pa. 1, 595 A.2d 1, 4–5 (1991)). Rescission is a form of retroactive relief. *See id.* "A rescission amounts to the unmaking of a contract, and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract." *Id.* (citing *Metropolitan Prop. & Liab. Ins. Co. v. Commonwealth*, 509 A.2d 1346, 1348 (Pa. Commw. Ct. 1986)).

"When attempting to void an insurance policy under Pennsylvania law, the insurer must prove that: (1) the insured made a false representation; (2) the insured knew the representation was false when it was made or the insured made the representation in bad faith; and (3) the representation was material to the risk being insured." *National Grange Mut. Ins. Co. v. CRS Auto Parts, Inc.*, 312 F. App'x 483, 484 (3d Cir. 2009) (citing *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993)); *New York Life Ins. Co. v. Johnson*, 923 F.2d 279, 281 (3d Cir. 1991); *see MDAdvantage Ins. Co. of New Jersey v. Hasiuk*, 612 F. Supp. 3d 452, 454 (E.D. Pa. 2020) (citing *Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 349 F. Supp. 3d 468, 483 (W.D. Pa. 2018)); *Associated Elec. & Gas Ins. Services, Ltd. v. Rigas*, 382 F. Supp. 2d 685, 690–91 (E.D. Pa. 2004); *American Franklin Life Ins. Co. v. Galati*, 776 F. Supp. 1054, 1059 (E.D. Pa. 1991). Each of these elements must be established by clear and convincing evidence. *National Grange Mut. Ins. Co.*, 312 F. App'x at 484. "Pennsylvania cases uniformly hold that a policy will be void *ab initio* if issued as a result of a misrepresentation whether the truth would have resulted in no policy being issued or whether the truth would have resulted in the policy being issued with a higher premium." *New York Life Ins. Co.*, 923 F.2d at 282.

### 2.      Unjust Enrichment – Reimbursement of Settlement Payments

A claim for unjust enrichment under Pennsylvania law must establish the following elements: (1) benefits conferred upon defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Century Indem. Co. v. URS Corp.*, No. 08-cv-5006, 2009 WL 2446990, at *5 (E.D. Pa. Aug. 7, 2009) (citing *Commonwealth ex. rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1137 (Pa.

Commw. Ct. 2005)); *Harry Miller Corp. v. Mancuso Chems. Ltd.*, 469 F. Supp. 2d 303, 319 (E.D. Pa. 2007) (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999)). "[T]he most significant element of the doctrine is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993). A "claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'" *Torchia ex rel. Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985) (quoting *Roman Mosaic & Tile Co. v. Vollrath*, 313 A.2d 305, 307 (Pa. Super. Ct. 1973)). *See also Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492-93 (E.D. Pa. 2016).

"[T]he essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties." *Gee v. Eberle*, 420 A.2d 1050, 1060 (Pa. Super. Ct. 1980); *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Gee*, 420 A.2d at 1060). That is, an unjust enrichment claim can be precluded by the finding that a written or express contract exists. *See Whitaker*, 198 F. Supp. 3d at 493 (finding that an unjust enrichment claim based on a theory of quasi-contract is precluded where a contract is shown to exist); *see also Century Indem. Co.*, 2009 WL 2446990, at *5 (finding that unjust enrichment sounds in quasi-contract, which imposes a duty "in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another"); *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) ("Pennsylvania law has long recognized that the doctrine of unjust enrichment is unavailable where . . . the relationship of the parties is founded on a written agreement or express contract.") (citations omitted); *Wilson v. Parker*, 227 A.3d 343, 353 (Pa.

Super. Ct. 2020) ("[T]he absence of an enforceable contract at law is the seed from which an unjust-enrichment claim in equity sprouts.").

"[U]nder Pennsylvania law, an insurer who makes a settlement payment on its insured's behalf may assert an unjust enrichment claim for reimbursement if it is determined after the payment is made that the insurer was not obligated to make the payment under the terms of the insurance policy." *Axis Specialty Ins. Co. v. Brickman Group LTD, LLC*, 756 F. Supp. 2d 644, 655 (E.D. Pa. 2010), *aff'd sub nom. Axis Specialty Ins. Co. v. Brickman Group Ltd., LLC*, 458 F. App'x 220 (3d Cir. 2012). To state an unjust enrichment claim for reimbursement, the insurer must establish that:

> (1) it did not make the payment due to a mistake of law; (2) the insured was on notice at the time of the payment that the insurer disputed its obligation to pay; (3) it did not make the payment primarily to protect its own interest; and (4) permitting reimbursement under the circumstances presented would not upset the delicate incentive structure inherent in the insurer/insured relationship.

*Id.* (finding that insurer was not entitled to reimbursement for settlement payments where insurer never disputed its obligation to pay, and because settlement payments primarily benefitted insurer, so permitting reimbursement would upset the incentive structure inherent in the insurer/insured relationship).

## IV.    ANALYSIS

RLI seeks reimbursement for the partial settlement payment it made on Slaski's behalf, which it alleges was nonvoluntary. In so doing, RLI seeks reimbursement not as a standalone claim (*i.e.*, to enforce a contract provision), but as a form of relief under an unjust enrichment theory. In this vein, RLI seeks to recoup the losses that it believes it never should have incurred under the allegedly void Policies.

The Court finds that Count IV (Declaratory Relief - Reimbursement) is duplicative of Count III insofar as it asks the Court to declare that Slaski is not covered under the 2022 Policy, duplicative of Count V insofar as it asks the Court to make a finding that RLI is entitled to reimbursement of its settlement contribution, and duplicative of Count VI insofar as it repeats the arguments for unjust enrichment and seeks the same relief. *See In re Lincoln Natl. COI Litig.*, 269 F. Supp. 3d 622, 639 (E.D. Pa. 2017) ("[C]ourts routinely decline to consider claims for declaratory relief that are duplicative of other claims already alleged."). The Court also finds that Count V (Reimbursement) is duplicative of Count VI to the extent that it merely repeats the requested relief for its unjust enrichment claim. *See id.* Accordingly, the Court will dismiss Counts IV and V with prejudice, as they do not put forth cognizable claims. Because these counts do not allege a cause of action which is unique or different from RLI's other claims, the Court finds that amendment of Counts IV and V would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile") *abrogated on other grounds by Iqbal*, 556 U.S. at 678. The discussion below will proceed as to Counts I, II, III and VI, only.

### A.    Declaratory Relief

Counts I and II in the Amended Complaint ask the Court to declare the 2022 and 2023 Policies void *ab initio* and rescinded. Count III seeks a declaration that Slaski is not covered under the 2022 Policy to the extent it is found to be void under Count I. The Court must now review the allegations in the Amended Complaint to determine whether RLI has sufficiently alleged that Slaski made false representations, knowingly or in bad faith, which were material to

12
030426

the risk being insured under the 2022 and 2023 Policies. *See National Grange Mut. Ins. Co.*, 312 F. App'x at 484.

### 1. RLI has alleged false representations by Slaski.

The Amended Complaint contains several allegations that Slaski made false representations in his 2022 Application and in his 2023 Application. Specifically, RLI alleges that in the 2022 Application, Slaski understated the number of drivers in his household (as "1"), understated the number of automobiles owned or operated by members of his household (as "4"), understated the number of drivers under the age of twenty-two (as "0"), and understated the number of residential properties Slaski or his household members owned (as "8"). Am Compl. ¶¶ 17-25, 29-30. RLI asserts that in actuality, as of the date of the 2022 Application, "there were five (5) 'drivers', five (5) 'members of [Slaski's] household', six (6) 'automobiles'[,] two (2) 'drivers' under the age of 22," *id.* at ¶ 26, and eleven (11) residential properties, *id.* at ¶ 32. RLI even goes so far as to list the alleged properties owned by Slaski at that time. *See id.* at ¶ 33. RLI also asserts that even when given an opportunity to correct this information a year later, Slaski again understated the number of household members, vehicles, and properties in his 2023 Application. *See id.* at ¶¶ 38-55. Thus, the Court finds that RLI has sufficiently alleged (multiple) false representations by Slaski.

### 2. RLI has alleged that Slaski knew his representations were false.

The facts in the Amended Complaint support an inference that Slaski knew the extent to which his answers in the 2022 and 2023 Applications misrepresented his household data and assets. RLI alleges, albeit broadly, that Slaski provided "knowingly" false responses in his 2022 and 2023 Applications, *see id.* at ¶¶ 25, 31, 48, 54, and that he acted with the "full knowledge and expectation that RLI would rely on said representations and omissions," *id.* at ¶¶ 112, 121.

Yet, RLI also alleges that both Applications contained (i) a Fraud Warning, cautioning Slaski of the legal consequences for knowingly defrauding an insurance company, *see id.* at ¶¶ 36, 59, and (ii) an Applicant Statement, prompting Slaski to ensure that his answers were "true and correct" and to avoid any omissions or misstatements of fact, *see id.* at ¶¶ 35, 58. The record reflects that at the time of these Applications, Slaski was an experienced property manager and potential landlord with several residential, rental, and/or vacation properties. *See id.* at ¶¶ 32-33, 55-56. There is no indication that the properties omitted from his insurance Applications were acquired by Slaski after the fact. Nor is there anything in the record to suggest that Slaski was unaware of his property ownerships, or of the number of persons, drivers, or vehicles within his household. Rather, Slaski's signatures under both Applicant statements indicate an awareness of his obligation to truthfully represent this information. *See id.* at ¶¶ 35, 58. Viewed altogether, in a light most favorable to the non-moving party, RLI's allegations plausibly allege that Slaski's alleged misrepresentations were made knowingly.

> **3.    The alleged misrepresentations were shown to be material to the risk being insured.**

Lastly, the Court must consider whether the alleged misrepresentations were material to the risk insured by the 2022 and 2023 Policies. Here, RLI alleges that the information regarding Slaski's household members, vehicles, properties, and other assets were "critical to RLI's consideration of the risk and determination to issue the [Policies] under the terms provided and in determining the appropriate premium charged and limits of liability." *Id.* at ¶¶ 111, 120. RLI claims that if it had known the true facts, it "would not have issued the [Policies] and/or would not have provided coverage under the same terms or for the same premium charged or under the same limits of liability." *Id.* at ¶¶ 114, 123. In essence, the facts demonstrate that an accurate assessment of this information was determinative in RLI's decision to issue the Policies, and in

how they were constructed. The Court can surmise from the allegations that more truthful answers on the Applications may have resulted in no policies being issued or, at the very least, their being issued at a higher premium. *See New York Life Ins. Co.*, 923 F.2d at 282. The Court finds that RLI has sufficiently alleged the materiality of the information contained in Slaski's representations. Accordingly, RLI has met its initial pleading burden under Pennsylvania law with respect to its requests for declaratory judgment on the 2022 and 2023 Policies. *See National Grange Mut. Ins. Co.*, 312 F. App'x at 484. The Motion to Dismiss Counts I through III is denied.

### B.      Unjust Enrichment

The Court's finding that RLI has alleged sufficient facts to suggest that the Policies should be declared void and rescinded also satisfies a precondition for RLI's unjust enrichment claim: that no written contract exists. *See Gee*, 420 A.2d at 1060 (explaining that an unjust enrichment claim under Pennsylvania law requires that no direct relationship between the parties exists). The Court need then only consider whether the elements of unjust enrichment have been adequately pleaded.

To survive a motion to dismiss, RLI's unjust enrichment claim must establish that RLI conferred a benefit on Slaski, and that Slaski appreciated that benefit, accepted it, and retained it under inequitable conditions. *Century Indem. Co.*, 2009 WL 2446990, at \*5 (citing *Commonwealth ex. rel. Pappert*, 885 A.2d at 1137). Here, RLI alleges that it conferred a benefit on Slaski in the form of its settlement contribution in the Winger Action. *See* Am. Compl. at ¶¶ 130, 142, 151, 156. The Amended Complaint alleges that "Slaski expressly consented to the settlement of the Winger Action, without objection," *id.* at ¶ 138, and "demanded" that RLI pay a settlement contribution up to the 2022 Policy limits, *see id.* at ¶¶ 81-84. This suggests that not

only did Slaski accept the settlement contribution from RLI, but that he was *expecting* it. Moreover, the record demonstrates that Slaski sought this settlement payment from RLI, in part, because it would serve "to protect Slaski from exposure to an excess judgment," *id.* at ¶ 4, meaning it would prevent him "from being prejudiced by a potential excess verdict at trial in the Winger Action," *id.* at ¶ 87, which could result in his "significant financial loss," *id.* at ¶ 84. Slaski's knowledge of the consequences, were RLI not to contribute, are clear from his statements and his repeated requests or "demands" for RLI to join the mediation. The Court therefore finds that Slaski's appreciation of RLI's contribution is evident from the record. The remaining question, then, is whether Slaski has retained this benefit under unjust circumstances that warrant reimbursement.

To show that it is entitled to reimbursement based on a theory of unjust enrichment, RLI must also demonstrate (i) that it did not make the settlement payment due to a mistake of law; (ii) that Slaski was on notice at the time of RLI's settlement contribution that RLI disputed its obligation to pay; (iii) that RLI did not make the settlement payment primarily to protect its own interest; and (iv) that permitting reimbursement "would not upset the delicate incentive structure inherent in the insurer/insured relationship." *See Axis Specialty Ins. Co.*, 756 F. Supp. 2d at 655.

### 1. The facts demonstrate that RLI did not make the settlement payment due to a mistake of law.

RLI has alleged that it did not make the settlement contribution due to a mistake of law, *see* Am. Compl. at ¶¶ 137, 144, 154, but to protect Slaski's interests from a potential verdict in excess of the settlement amount, *id.* at ¶¶ 5, 98, 99, 130, 135, 146, 156. In February and April of 2025, Slaski's counsel asked RLI to contribute to the settlement of the Winger Action so as not to risk exposing Slaski "to significant financial loss," *id.* at ¶¶ 75-76, because the Wingers' "injuries are significant and have the potential to result in an eight-figure verdict against Slaski,"

*id.* at ¶¶ 83-84. RLI's response indicated an agreement to participate for this purpose, but expressly reserved its right to petition this Court for declaratory judgment voiding the Policies. The present circumstances are not such as would prevent RLI from being able to simultaneously make its settlement contribution to the Winger Action while still reserving its right to seek rescission of the Policies, and the Court does not find that RLI was mistaken about its ability to do so. Thus, it finds that the first element of RLI's unjust enrichment claim for reimbursement has been adequately pleaded.

### 2.   The record shows Slaski knew that RLI disputed its obligation to pay.

The Amended Complaint has also sufficiently alleged that, at the time of RLI's settlement contribution, Slaski was aware that RLI disputed its obligation to pay. As early as February 21, 2025, RLI sent the NOI to Slaski, voicing its intent to rescind the Policies based on alleged misrepresentations contained in the 2022 and 2023 Applications. Am. Compl. at ¶ 77. Then, on April 30, 2025, RLI agreed to participate in the mediation, advising that such action "was not waiver of its right to seek recission or reimbursement for any contributions made toward settlement," *id.* at ¶¶ 86-88, and it filed the instant matter against Slaski for rescission and reimbursement that same day. *See* Compl. A letter from RLI's counsel to Slaski's counsel on May 1, 2025, further confirmed its position, stating that "RLI's contribution is not a voluntary payment and is being made without waiver of, and subject to, RLI's rights to pursue its rescission action and pursue reimbursement from Mr. Slaski." *See* ECF No. 10-3. Thus, the record supports finding that as of the date of the settlement, May 1, 2025, Am. Compl. at ¶¶ 81, 93, Slaski was given clear notice of RLI's dispute regarding its payment obligations. The Court finds that the second element of RLI's unjust enrichment claim has been sufficiently pleaded.

### 3. RLI has alleged that it did not make the settlement payment primarily to protect its own interest.

RLI asserts that it did not make the settlement contribution in the Winger Action primarily to protect its own interest. *See id.* at ¶¶ 145, 155. RLI alleges that it "agreed to pay the [settlement] Contribution on a non-voluntary basis to protect Slaski's interests in exchange for a full and complete release of all claims against Slaski in the Winger Action." *Id.* at ¶ 99. Slaski counters this allegation by arguing that RLI's settlement payment was voluntary and thus cannot be recovered, because it went toward a demand which RLI now argues was not enforceable against it. *See* Brief in Support 14, ECF No. 12-1 (discussing voluntary payment doctrine). Yet, at the time RLI made the settlement payment, it did not yet know whether its declaratory judgment claim would prevail, or whether it would still be obligated to make payments on Slaski's behalf under the 2022 or 2023 Policies. The present action (in which RLI *seeks* to declare the Policies void) had been filed as of the Winger mediation but was still pending—as it is now. Unless and until a final resolution by the Court declares the Policies void, RLI is entitled to act in self-preservation, and "out of concern that the Polic[ies] [are] still binding." *Berkley*, 858 F. App'x 561, 569 (3d Cir. 2021). Such a settlement contribution may serve to protect Slaski's immediate interests and to protect RLI from a potential bad faith suit, but the contribution itself "does not render [RLI] a volunteer." *Id.* RLI's stated reason for contributing to the settlement—to help Slaski avoid a potential excess verdict while the instant suit was pending—is still sound. Without information regarding the amount of the settlement contribution, the Court cannot assume the degree to which RLI was merely limiting its own exposure, and cannot conclude that RLI's settlement contribution was *primarily* for its own benefit. When viewed in the light most favorable to RLI, these facts show that the third element of RLI's unjust enrichment claim for reimbursement has been suitably pleaded.

**4. Reimbursement under these circumstances would not upset the incentive structure inherent in the insurer/insured relationship.**

Since the Court may consider the unjust enrichment claim only to the extent that there is no written agreement, it cannot infer that permitting reimbursement would upset the incentive structure inherent in the insurer/insured relationship. Since the Court has declined to dismiss the declaratory judgment counts, RLI's claims that the 2022 and 2023 Policies are void *ab initio* still stand; if ultimately resolved in RLI's favor, all rights and responsibilities between the parties would be abrogated from the inception of the contracts. *See Berkley*, 858 F. App'x at 567. It would be as if no insurer/insured relationship existed at all. Thus, at this point in the pleading stage, the facts do not indicate that reimbursement for unjust enrichment would upset an existing incentive structure; rather, when viewed in the light most favorable to RLI, they suggest that it would be inequitable for Slaski to retain the settlement payments under present circumstances. *See Century Indem. Co.*, 2009 WL 2446990, at *5. The Motion to Dismiss is denied as to Count VI.

## V.    CONCLUSION

This Court dismisses Counts IV and V with prejudice for failure to state a claim. The Motion to Dismiss is therefore granted as to Counts IV and V, but it is denied as to Counts I, II, III and VI, as RLI has stated plausible claims for declaratory judgment and unjust enrichment. The case shall proceed on Counts I, II, III and VI only. Leave to amend is not warranted. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge